UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JENNIFER LEE BENNER,

                        Plaintiff,        Case # 18-CV-6679-FPG

v.                                                              DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

## INTRODUCTION

Plaintiff Jennifer Lee Benner has applied for benefits under the Social Security Act ("the Act") three times. This case concerns Plaintiff's third application, but the previous two applications are relevant for purposes of understanding the procedural history behind the third claim.[1]

On March 15, 2011, Plaintiff filed her first application for Disability Insurance Benefits ("DIB") under Title II of the Act and Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 25-1 at 4. The Social Security Administration ("SSA") issued a Notice of Disapproved Claim on June 9, 2011, denying both the SSI and DIB claims. *Id.* The Notice advised Plaintiff of her right to request a hearing before an administrative law judge ("ALJ") within 60 days of her receipt of the Notice. *Id.* It does not appear that Plaintiff requested a hearing.

Plaintiff filed her second application for DIB and SSI on April 18, 2012. The SSA issued a Notice of Disapproved Claim for the DIB claim on May 6, 2012. Tr.[2] 169; ECF No. 18 at ¶ 10;

---

[1] In a Social Security case, the Court acts as an appellate court, not a trier of fact and, as such, may not consider evidence outside the administrative record. *Rice v. Comm'r or Soc. Sec.*, 114 F. Supp. 3d 98, 101 n.1 (W.D.N.Y. 2015). However, both parties include in their submissions to the Court a recitation of facts pertaining to Plaintiff's previous two applications. Those facts do not appear to be in dispute. This appeal concerns whether the ALJ in this case, in adjudicating Plaintiff's third application for benefits, reopened any of Plaintiff's previous applications.

[2] "Tr." refers to the administrative record in this matter. ECF No. 12.

ECF No. 25-1 at 4.  The SSA issued a Notice of Disapproved Claim for the SSI claim on August 29, 2012, advising that the claim was denied because she was not disabled under the SSA's rules.  ECF No. 25-1 at 4.  The Notice advised Plaintiff of her right to request a hearing before an ALJ within 60 days of her receipt of the Notice.  *Id.*  Plaintiff requested a hearing and the SSA scheduled one, but Plaintiff failed to appear for the hearing and the ALJ dismissed Plaintiff's claim on January 30, 2014.  Tr. 79.  Plaintiff requested review by the Appeals Council, which denied Plaintiff's request on March 21, 2014.  ECF No. 25-1 at 5.

Plaintiff filed a third application for DIB on February 18, 2016, alleging disability due to depression, anxiety, insomnia, sciatica, back injury, and rectal bleeding, beginning May 1, 2008.[3]  Tr. 175-76.  The SSA denied her claim and Plaintiff requested a hearing before an ALJ.  Tr. 81-88.  Plaintiff, appearing with counsel, testified before ALJ John Murdock on December 13, 2016.  Tr. 31-68.  The ALJ issued an unfavorable decision on November 20, 2018.  Tr. 7-17.  Plaintiff appealed to the Appeals Council, which denied her request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-6.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  EFC Nos. 18, 25.  For the reasons that follow, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and the ALJ's decision is AFFIRMED.

---

[3] According to the Commissioner, the SSA sent Plaintiff a letter on February 15, 2015, informing her that she was not eligible for SSI benefits because she had informed the SSA that she did not want to apply for SSI.  ECF No. 25-1 at 5.

**LEGAL STANDARD**

**I.     District Court Review**

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g) and § 1383(c)(3)) (other citation omitted).  The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

**II.    Disability Determination**

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

**I.      The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in gainful activity from the onset date, May 1, 2008, to the date last insured, December 31, 2010. Tr. 12. At step two, the ALJ found that Plaintiff had several medically determinable impairments, including depressive disorder, anxiety disorder, and substance abuse, but that the impairments were not severe. Tr. 12-16. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, from May 1, 2008 through December 31, 2010. Tr. 17.

**II.     Analysis**

Plaintiff's arguments are at times convoluted. Plaintiff does not argue that the ALJ's decision is unsupported by substantial evidence. Rather, Plaintiff contends that (1) the ALJ failed to consider Plaintiff's application as one for SSI, constituting good cause to reopen the matter and (2) the ALJ constructively reopened the previous SSI applications through his statements at the hearing. The Court disagrees.

Plaintiff's arguments hinge first on whether the ALJ ever decided to reopen her previous SSI claims filed in 2011 and 2012. There is no evidence in the administrative record to demonstrate that the ALJ ever explicitly made such a determination to reopen Plaintiff's previous SSI applications, which were decided in 2011 and 2014.

To be sure, there was confusion at the hearing regarding the type of claim pending before the ALJ. Plaintiff's third application for benefits, pending before the ALJ, was only for DIB. Plaintiff's attorney, Richard Goldberg, acknowledged that Plaintiff had applied for DIB, but stated "I believe she's also applied for SSI. . . . I assume that it was also for SSI." Tr. 34. Plaintiff

indicated that she "didn't know what [she] was applying for." Tr. 34. The ALJ indicated that the SSA had "only sent the Title II, the Social Security Disability" claim forward. Tr. 34. After looking through the record and attempting to discern why an SSI claim may not have been moved forward, the ALJ indicated that they would "go ahead and then we will establish after the hearing which or both of the programs we are adjudicating this under." Tr. 35.

Still, the ALJ pondered why only the DIB claim was before him when the matter appeared, on its face, more like a "classic SSI" claim. Tr. 38. The ALJ explained that "[t]his is clearly a Title II at this stage" and, since he only had a DIB application before him, he could only consider evidence through the date last insured, in 2010, thereby cutting out evidence from after that time that could have otherwise been used to establish disability for SSI. Tr. 39. The ALJ explained that the hearing would proceed and then he would have the staff look into whether there was an SSI claim being processed and, if so, escalate the claim so that it could be heard together with the DIB claim. Tr. 39.

At the conclusion of the hearing, Plaintiff's attorney asked how the SSI claim could be heard if Plaintiff indeed had not filed one along with her February 18, 2016 DIB application. Tr. 66. The ALJ explained that he was not sure if the SSI claim could be adjudicated "retroactively," but that Plaintiff could file a new SSI claim, which, as he explained earlier, could be folded into the DIB adjudication. Tr. 66-67. The ALJ again warned, with respect to the DIB claim pending before him that, "with such a narrow window here and with the way the regulations take a dim view of the substance abuse, I – if I were in your shoes I would try to cover both bases if I could." Tr. 67. The ALJ continued, "if there is an SSI case here it would be better to have it here. I just, I'm a little puzzled why it isn't unless they figure resources for some reason are – it could be that since she's on DSS that might be taking her out of the resource category." Tr. 67.

5

Even though the record demonstrates that the ALJ never reopened the SSI applications, any such a reopening would not comport with the Social Security Regulations, which only permit reopening of a claim in very limited circumstances. Those regulations provide that the SSA may reopen a final determination of the Commissioner on its own initiative or at the request of the claimant. 20 C.F.R. § 416.1487(b). Even then, a determination may only be reopened in the following circumstances:

> (a) Within 12 months of the date of the notice of the initial determination, for any reason;
> (b) Within two years of the date of the notice of the initial determination if we find good cause as defined in § 416.1489, to reopen the case; or
> (c) At any time if the determination or decision was obtained by fraud or similar fault . . . .

20 C.F.R. § 416.1488. The SSA will find good cause if:

> (1) New and material evidence is furnished;
> (2) A clerical error was made; or
> (3) The evidence that was considered in making the determination of decision clearly shows on its face that an error was made.

20 C.F.R. § 416.1489(a). The SSA will not find good cause "if the only reason for reopening is a change of legal interpretation or administrative ruling upon which the determination or decision was made." 20 C.F.R. § 416.1489(b).

Here, Plaintiff did not meet any of the requisite conditions for reopening. She did not request reopening within the first two years of the either the 2011 or 2014 SSI decisions. Even had she timely requested reopening, Plaintiff never made any showing of good cause to reopen. Nor has Plaintiff ever argued that the previous SSI determinations were made by "fraud or similar fault."

To the extent the ALJ decided *not* to reopen Plaintiff's prior SSI claim, such a denial is not a final decision for purposes of § 405(g). This federal court therefore lacks jurisdiction to review

6

the administrative decision not to reopen the previous SSI claim.  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).  There are, however, circumstances in which a federal court may review the Commissioner's decision not to reopen a disability application: (1) where the Commissioner constructively reopened the claim; and (2) where Plaintiff was denied due process.  *Id.*  Plaintiff only argues that the first applies here.

An ALJ constructively reopens a decision where he or she "reviews the entire record and renders a decision on the merits."  *Saxon v. Astrue*, 781 F. Supp. 2d 92, 99 (N.D.N.Y. 2011).  "A prior disability application is not 'constructively reopened,' . . . when the ALJ merely discusses prior proceedings and evidence to describe a claimant's background."  *Id.*

Here, the ALJ never reviewed the entire previous SSI claim, nor did he make a decision on its merits.  In fact, quite the opposite.  The ALJ made clear that no SSI claim was before him.  At the hearing, the ALJ merely discussed the prior SSI applications and mused whether an SSI claim was filed in relation to the instant application and, if not, why.  The ALJ here never made any statement even suggesting that the previous SSI claims were being reopened; he only indicated that he would look into the matter to see if one was filed here.  In fact, the ALJ made clear that if there was no SSI claim pending, Plaintiff should file one.  It appears Plaintiff never did.  Such a suggestion is not sufficient for this Court to conclude that the ALJ constructively reopened Plaintiff's previous SSI claim.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 18, is DENIED, the Commissioner's motion for judgment on the pleadings, ECF No. 25, is

GRANTED.  The Commissioner's decision is AFFIRMED, and the complaint is DISMISSED WITH PREJUDICE.  The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: November 6, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court